IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL KENYATTA MATTOX,

      Petitioner,

      v.                            No. 12-3121-SAC

DAVID MCKUNE and
DEREK SCHMIDT,

      Respondents.

MEMORANDUM AND ORDER

This case comes before the Court on a petition for habeas corpus filed pursuant to 28 USC § 2254, which alleges ineffective assistance of appellate counsel. Petitioner was convicted in state court of reckless second degree murder and criminal discharge of a firearm. He was sentenced to consecutive terms of 117 months and 59 months, for a controlling prison sentence of 176 months.

## I. Facts

The Court adopts the facts set forth in Petitioner's prior decisions, see *State v. Mattox*, 280 Kan. 473, 475-479 (2005), and shall not repeat them except as necessary to the analysis. *See* 28 U.S.C. § 2254(e)(1) (a court presumes that the factual findings of the state court are correct unless the petitioner rebuts that presumption by "clear and convincing evidence."); *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004).

John Lane was found dead in his car from two gunshot wounds to his head in October of 2001. Five days later, Petitioner was arrested on an unrelated charge, and officers found an empty magazine for a .380 caliber pistol in his pocket. The issue in this habeas petition relates to the admissibility of the statements Petitioner made soon after his arrest - statements to a corrections officer, statements subsequently videotaped by Detectives, and statements Petitioner made in writing.

Petitioner moved to suppress but the trial court found that Petitioner had waived his right to counsel so Petitioner's statements to Officer Unruh, both oral and written (with signature redacted), were admissible. But the trial court found that Petitioner had clearly reinvoked his right to counsel during his videotaped interview with the Topeka detectives, so suppressed that interview, Petitioner's signature on the handwritten statement, and the subsequently-found handgun. The State then moved for reconsideration and the trial court altered its ruling, holding that Petitioner had not clearly reinvoked his right to counsel. Thus no evidence was suppressed from the trial.

In Petitioner's direct appeal, the Kansas Court of Appeals (KCOA), reversed Petitioner's convictions, finding that he did not knowingly and voluntarily waive his rights to remain silent and to assistance of counsel during his videotaped police interrogation. *State v. Mattox*, 86 P.3d 1025 (Table), 2004 WL 719250 (Case No. 89,547). But the Kansas Supreme Court

2

found the videotaped confession to be knowing and voluntary, so reversed the KCOA's decision and reinstated Petitioner's convictions. *State v. Mattox*, 280 Kan. 473 (2005). It did not reach the issue of reinvocation, which is the sole issue raised in this petition, because it found that issue had been abandoned on appeal. *Mattox*, 280 Kan. at 492.

Petitioner thereafter filed a motion pursuant to K.S.A. § 60-1507, alleging that his appellate counsel was ineffective for having abandoned the issue of reinvocation in his direct appeal. Appellate counsel admitted error and the district court granted the motion, but the Kansas Supreme Court reversed, finding that Petitioner had suffered no prejudice from any unreasonable performance by counsel since the outcome would have been the same even had counsel successfully raised the omitted issue. *Mattox,* 293 Kan. 723.

**II. AEDPA Standard**

The habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA "erects a formidable barrier to federal habeas relief," *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013), and "requires federal courts to give significant deference to state court decisions" on the merits. *Lockett v. Trammel*, 711 F.3d 1218, 1230 (10th Cir. 2013); *see also Hooks v. Workman*, 689 F.3d 1148, 1162-63 (10th Cir. 2012) ("This highly deferential standard for evaluating state-court rulings demands state-court decisions be given the benefit of the doubt." (quotations omitted)).

Under AEDPA, where a state prisoner presents a claim in habeas corpus and the merits were addressed in the state courts, a federal court may grant relief only if it determines that the state court proceedings resulted in a decision (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *See also Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 783-84, 178 L.Ed.2d 624 (2011).

In reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). In making this assessment, the Court reviews the factual findings of the state court for clear error, reviewing only the record that was before the appellate court. *Cullen v. Pinholster*, __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011).

A writ of habeas corpus may issue only when the petitioner shows "there is *no possibility* fairminded jurists could disagree that the state court's

decision conflicts with [the Supreme] Court's precedents." *Richter,* 131 S.Ct. at 786 (emphasis added). "Thus, "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." *Id.* "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Titlow*, 134 S. Ct. at 16 (quoting *Richter*, 131 S. Ct. at 786). See *Frost v. Pryor*, ___ F.3d ___, 2014 WL 1647013 (10th Cir. April 25, 2014).

## III. Issue

The sole issue Petitioner raises in this petition is that his appellate counsel was constitutionally ineffective in not arguing on direct appeal that Petitioner had reinvoked his *Miranda* right to counsel. Petitioner contends that he unambiguously reasserted his right to counsel when, shortly after he began speaking to the detectives, he said, "I know I need to talk to my lawyer, because I know anything I say y'all are going to twist it." (R. XX, Trial exhibit #26). Petitioner argues that his subsequent confession to the detectives was obtained in violation of *Edwards v. Arizona*, 451 U.S. 477 (1981). In response to the State's contention that the KCOA erred in finding Petitioner's waiver of *Miranda* rights to be involuntary, appellate counsel failed to raise the alternative argument that Petitioner unambiguously reinvoked his right to counsel after speaking with Officer Unruh. *Mattox*, 124 P.3d at 19.

**State Court Holding**

Petitioner raised this reinvocation issue in the State's appeal from the district court's grant of habeas relief. The Kansas Supreme Court assumed, for purposes of argument, that Petitioner had unambiguously reinvoked his *Miranda* rights. Nonetheless, it found that even if Petitioner's confession to the detectives had been excluded, the jury's verdict would have been the same, given the other evidence against him. *Mattox v. State*, 293 Kan. at 725. Therefore, it found that Petitioner had "failed to meet his burden to show demonstrated prejudice under the *Strickland* test." *Mattox*, 293 Kan. at 731. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh. denied* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984).

Specifically, the Kansas Supreme Court held that if the reinvocation argument had succeeded, Petitioner's videotaped statements to the Topeka detectives and his signature on the written statement would have been suppressed but all remaining evidence would have been admissible. The remaining evidence included the gun registered to Petitioner, statements that Petitioner was in the car with Gigger, that Gigger told Petitioner to get the gun out and Petitioner complied, that Petitioner got ammunition from the trunk, that Petitioner told Gigger that Lane deserved to be shot at for driving like he was going to shoot at them, that Gigger took the gun and shot Lane, that bullets and a clip were thrown away after the murder, and that

6

Petitioner had an empty clip of the same caliber in his coat when he was arrested. *Mattox*, 293 Kan. at 727-29. Accordingly, the Supreme Court found "the exclusion of those statements would have had no impact on the outcome of his trial given the other evidence against him." *Mattox v. State*, 293 Kan. 723, 730-31 (2011).

The Kansas Supreme Court further reasoned that even if Petitioner's statements to the Topeka detectives had been suppressed, his unsigned written statement, the gun, and the ballistics-test results would have been admissible under the United States Supreme Court's ruling in *United States v. Patane*, 542 U.S. 630, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004) (holding that nontestimonial evidence is admissible even if it is located as a result of a suspect's voluntary but unwarned statements made while the suspect was in custody. *Mattox v. State*, 293 Kan. 723, 727-30 (2011). The Court reviewed the other evidence in the case, and found no likelihood of a different result. The Kansas Supreme Court ultimately did not believe that the exclusion of Mattox's statements to detectives would have affected the jury's verdict. *Mattox,* 293 Kan. at 730-31.

### Habeas Review

The Court reviews petitioner's claim of ineffective assistance of counsel under the familiar framework laid out in *Strickland,* 466 U.S. 668. Under that standard, to prevail on a claim of ineffective assistance of counsel, petitioner must show both that his counsel's performance "fell below an objective

standard of reasonableness" and that "the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687–88; accord *Hooks v. Workman,* 606 F.3d 715, 723 (10th Cir. 2010).

Furthermore, because this is a § 2254 proceeding, the Petitioner faces an even greater challenge, as this court defers not only to the attorney's decision in how to best represent a client but also to the state court's determination that counsel's performance was not deficient. *Byrd,* 654 F.3d at 1168. For that reason, this court's review of a defendant's habeas claim of ineffective assistance of counsel is "doubly deferential." *Knowles v. Mirzayance,* 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009).

## Performance

The standard for assessing appellate counsel's performance is the same as that applied to trial counsel. *Smith v. Robbins,* 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). Respondents do not concede that Petitioner's appellate counsel performed in an objectively unreasonable manner. This Court expresses no opinion on the performance of counsel but instead focuses on the second prong of the *Strickland* standard—prejudice. *See Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

## Prejudice

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [*Strickland*], at 694, 104 S.Ct. 2052. *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411 (2009). To prevail on his ineffective-assistance claim, Petitioner must show, therefore, that there is a "reasonable probability" that he would have prevailed on his reinvocation claim had counsel pursued it on appeal.

Petitioner contends that the Kansas Supreme Court's finding of no prejudice is unreasonable for several reasons. First, because it fails to take into account the evidentiary power of a confession, which Petitioner contends is unique:

> A confession is like no other evidence. Indeed, 'the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him. . . . Certainly, confessions have profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind if told to do so.'

*Arizona v. Fulminante*, 499 U.S. 279, 296 (1991). But this language is dicta which largely quotes from a dissenting Justice in another case and does not reflect clearly-established federal law. *See Fulminante*, 499 U.S. at 296, quoting *Bruton v. United States,* 391 U.S., at 139–140, 88 S.Ct., at 1630 (White, J., dissenting). "[C]learly established Federal law" for purposes of §

2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The holding of *Fulminante* is that the admission of an "involuntary" confession at trial is subject to harmless error analysis. The Kansas Supreme Court applied a harmless error analysis in reviewing the admission of Petitioner's confession, and thus did not offend the law established in *Fulminante*.

Petitioner also asserts that the Kansas Supreme Court was unreasonable in finding that the admissible evidence from Officer Unruh would not have led to his conviction, had his statement to the Detectives been suppressed. Petitioner contends that the jury would have received only a sketchy version of events from Officer Unruh – that Petitioner and Gigger were in a car when Gigger became upset with a car that was behind them; that Gigger told Petitioner to get the gun from the glove compartment; that Petitioner complied and handed the gun to Gigger; and that Gigger shot the victim. Petitioner alleges that, in contrast, the videotaped interview with the Topeka Detectives contains "a thorough and detailed account of the events" surrounding the victim's death and Petitioner's participation in it -- Petitioner diagrams the setting, admits that he retrieved the gun from the glove box and loaded it, demonstrates how Gigger fired the weapon, and admits to involvement in gang activity and to using drugs. But Petitioner fails to show that even the "sketchy version" of events would be insufficient to warrant a

finding of guilty, when coupled with other admissible evidence such as the gun itself. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Richter,* 131 S.Ct. at 787 (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052). Rather, the "likelihood of a different result must be *substantial* ...." *Id.* at 792 (emphasis added).

Petitioner also asserts that if the gun had been admitted but the statements had not, then the jury would not have known how the gun was recovered. So the jury would not have known that Petitioner told officers where he had disposed of the gun, or that Petitioner later went with officers to help retrieve it. But Petitioner does not show how those facts are significant, or how their absence could have led the jury to find him not guilty. Petitioner contends only that the State's case would be weakened because there would be no direct connection between him and the gun. But Petitioner told Officer Unruh that he retrieved it from the glove compartment and handed it to Gigger, and other admissible evidence showed that the gun had been purchased by Petitioner and that the clip in his pocket fit the gun. Thus even had Petiitoner's statements to the detectives been suppressed, other evidence remains sufficient to prove a direct and significant connection between Petitioner and the gun.

 Lastly, Petitioner contends that the improperly-admitted statements are not necessarily just cumulative. *See Fulminante*, 499 U.S. at 298-99. Instead, Petitioner generally asserts prejudice because the jury may have

relied on his improperly-admitted statements to the detectives to reinforce and corroborate his properly-admitted statements to Officer Unruh. But Petitioner fails to demonstrate a reasonable probability that the result of the proceeding may have been different if the "improperly-admitted statements" had been excluded.

None of Petitioner's arguments shows unreasonableness. "The Supreme Court has articulated a test for reasonableness: a state court decision is reasonable "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." [*Strickland*], at 786 (quoting *Alvarado,* 541 U.S. at 664, 124 S.Ct. 2140)." *Frost,* ___ F.3d ___, 2014 WL 1647013 at 12. Under this "fairminded jurist" test,

> if all fairminded jurists would agree the state court decision was incorrect, then it was unreasonable and the habeas corpus writ should be granted. If, however, some fairminded jurists could possibly agree with the state court decision, then it was not unreasonable and the writ should be denied.

*Frost*, 2014 WL 1647013 at 12. Here, it is easy to conclude that some fairminded jurists could agree with the Kansas Supreme Court's decision that Petitioner was not prejudiced by his counsel's omission of the reinvocation argument on direct appeal.

Although making out a *Strickland* claim can be an onerous burden, "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.". *Richter*, ___ U.S. ___,

131 S.Ct. at 788. Petitioner has failed to do so here. The Kansas Supreme Court applied *Strickland* and *Patane* in an objectively reasonable manner.

In doing so the Kansas Supreme Court offended no other clearly-established federal law. Petitioner argues that his rights under *Edwards* were violated, but *Edwards* held:

> ... that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards*, 451 U.S. at 484-85. But the issue now is not whether Petitioner validly waived his right to counsel or clearly invoked his right to counsel or initiated further communication with police; it is whether the Kansas Supreme Court reasonably found that Petitioner had shown no prejudice from any unreasonable performance by his appellate counsel. And the undoubted answer to that question is yes.

IT IS THEREFORE ORDERED that the petition for habeas corpus relief under 28 U.S.C. § 2254 (Dk.1) is denied.

Dated this 19th day of June, 2014, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge